GORTNEY v NORFOLK & WESTERN RAILWAY COMPANY

Docket No. 173244. Submitted March 13, 1996, at Detroit. Decided May 10, 1996, at 9:20 A.M.

Eileen J. Gortney, as personal representative of the estate of Justine T. Gorney, Jr., brought an action in the Wayne Circuit Court against the Norfolk & Western Railway Company, seeking damages under the Federal Employers' Liability Act (FELA), 45 USC 51 *et seq.*, and alleging that the decedent's death from cancer had resulted from occupational exposure to diesel fumes while he had been in the employ of the defendant. The defendant moved for summary disposition on the basis of a release executed by the decedent and on the basis of the operation of the applicable statute of limitations. The court, Kathleen I. MacDonald, J., granted summary disposition for the defendant on the basis that the release, which was part of a resignation and release agreement that had been executed by the decedent for consideration in acceptance of an offer of early retirement, released the defendant from its liability under the FELA. The plaintiff appealed, and the defendant cross appealed.

The Court of Appeals *held*:

1. Under both state and federal law, the scope of a release is controlled by the intent of the parties as it is expressed in the release. If the language of the release is unambiguous, the intent of the parties is ascertained from the plain and ordinary meaning of the release.

2. The language of the release executed by the plaintiff's decedent evidences a clear intent to settle and release any claim, action, or cause of action of any kind that the decedent had or could have had against the defendant as a result of his employment with the defendant. Accordingly, the trial court correctly ruled that the decedent's release was intended to release the defendant from all personal injury actions that arose during the course of the decedent's employment with the defendant.

3. A release may be rendered invalid on a showing that the release was executed as the result of a mutual mistake of fact. A mutual mistake of fact is established only where it is shown that, at the time of the execution of a release, both parties were mistaken concerning an existing fact that was material to the agreement.

Where there is a general release of all claims, a mutual mistake can vitiate the effect of the release only if neither party intended the release to be a general release.

4. The plaintiff failed to present any facts in support of her contention that the decedent did not intend to execute a general release or that he did not understand that the release was to be a general release of all claims. Further, any mutual mistake concerning the state of the decedent's health was not material to the release agreement and, thus, would not invalidate the release.

5. The question whether a general release can exempt a defendant from liability under the FELA was not raised in the trial court and, accordingly, is waived on appeal.

6. In view of the disposition of the plaintiff's appeal, it is unnecessary to address the issues raised in the defendant's cross appeal.

Affirmed.

1. RAILROADS — FEDERAL EMPLOYERS' LIABILITY ACT — STATE COURTS — CIVIL PROCEDURE.

An action brought under the Federal Employers' Liability Act in a state court is subject to state procedural rules (45 USC 51 *et seq.*).

2. RELEASE — SCOPE OF RELEASE — INTENT OF PARTIES.

The scope of a release is controlled by the intent of the parties as it is expressed in the release; if the language of the release is unambiguous, the intent of the parties is ascertained from the plain and ordinary meaning of the language of the release.

3. RELEASE — MUTUAL MISTAKE OF FACT — GENERAL RELEASE.

A release may be rendered invalid where both parties were mistaken at the time of execution of the release concerning an existing fact that was material to the agreement; a mutual mistake can vitiate the effect of a general release of all claims only if neither party intended the release to be a general release.

*Sachs, Waldman, O'Hare, Helveston, Hodges & Barnes, P.C.* (by *George T. Fishback*), for the plaintiff.

*Hackett, Maxwell & Phillips, P.L.L.C.* (by *Phillip B. Maxwell* and *Mark T. Butler*), for the defendant.

Before: MURPHY, P.J., and GRIFFIN and E. R. POST,* JJ.

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

GRIFFIN, J. In this action brought under the Federal Employers' Liability Act (FELA), 45 USC 51 *et seq.*, plaintiff appeals as of right an order of the circuit court granting defendant summary disposition pursuant to MCR 2.116(C)(7) (claim barred by release). We affirm.

I

For most of his adult life, plaintiff's decedent, Justin T. Gortney, Jr., worked as a switchman and yardmaster for defendant, Norfolk & Western Railway Company. In 1987, Mr. Gortney accepted defendant's offer of early retirement. According to the terms of the agreement, Mr. Gortney received $40,000 in exchange for his decision to sign a "resignation and release." The written resignation and release states in pertinent part:

> I, J. T. Gortney . . . hereby resign and surrender any right to employment by Norfolk Southern Corporation, Norfolk and Western Railway Company, Southern Railway Company and any employer affiliated with or controlled by any of the aforenamed companies, for convenience referred to hereinafter individually and collectively as the "Company," and hereby release and forever discharge the Company and its agents, officers and employees from any claim (with the exception of vested pension rights), demand, action or cause of action, of any kind whatsoever, known or unknown, which I have or could have on account of, or in any manner arising out of or connected with, my employment by the said Company, or the termination thereof, including but not limited to any claim or right asserted under or arising out of any agreement, regulation, condition or statute affording me employment protection, protecting me from employment discrimination, or covering the conditions of my employment.

\*    \*    \*

THIS RESIGNATION AND RELEASE AND THE DEDUCTIONS [of federal and state taxes] AUTHORIZED HEREIN ARE FULLY UNDERSTOOD BY ME. THIS DOCUMENT IS EXECUTED VOLUNTARILY AND SOLELY FOR THE CONSIDERATION ABOVE EXPRESSED, WITHOUT ANY OTHER REPRESENTATION, PROMISE, OR AGREEMENT OF ANY KIND WHATSOEVER HAVING BEEN MADE OR OFFERED TO ME BY THE COMPANY OR ANY AGENT, OFFICER, EMPLOYEE, OR REPRESENTATIVE OF THE SAID COMPANY.

On September 30, 1987, Justin T. Gortney executed the above document and retired from defendant's employ. Approximately two years later, Mr. Gortney died of lung cancer. In 1992, plaintiff as personal representative of the estate brought suit against defendant under the FELA. Plaintiff claims that occupational exposure to diesel fumes caused decedent's lung cancer and subsequent death.

In November 1993, defendant moved for summary disposition pursuant to MCR 2.116(C)(7) on the grounds that plaintiff's claim was barred by the terms of the release and by operation of the applicable statute of limitations. The trial court granted defendant's motion, ruling that the release barred plaintiff's cause of action. The trial court did not address defendant's argument that plaintiff's complaint was barred by the statute of limitations.

II

A FELA case adjudicated in state court is subject to state procedural rules. *St Louis SW R Co v Dickerson*, 470 US 409, 411; 105 S Ct 1347; 84 L Ed 2d 303 (1985); see *Cameron v Norfolk & W R Co*, 891 SW2d 495, 497, 498 (Mo App, 1994). Accordingly, we apply the Michigan standard of review in assessing the propriety of the trial court's decision to grant summary disposition. In reviewing a motion for summary disposition pursuant to MCR 2.116(C)(7), we must accept plain-

tiff's well-pleaded allegations as true, *Shawl v Dhital*, 209 Mich App 321, 323; 529 NW2d 661 (1995); *Simmons v Apex Drug Stores, Inc*, 201 Mich App 250, 252; 506 NW2d 562 (1993), and examine any pleadings, affidavits, depositions, admissions, and documentary evidence submitted by the parties in a light most favorable to the nonmovant. MCR 2.116(G)(5); *Skotak v Vic Tanny Int'l, Inc*, 203 Mich App 616, 617; 513 NW2d 428 (1994). If the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the trial court must enter judgment without delay. MCR 2.116(I)(1); *Skotak, supra* at 617; *Nationwide Mutual Ins Co v Quality Builders, Inc*, 192 Mich App 643, 647-648; 482 NW2d 474 (1992).

### III

Plaintiff first contends that the trial court misconstrued the language of the release as being sufficiently broad to encompass claims for personal injury. We disagree. The United States Supreme Court has directed that federal law be employed to assess the validity of a release that waives FELA rights. *Maynard v Durham & S R Co*, 365 US 160, 161; 81 S Ct 561; 5 L Ed 2d 486 (1961) (citing *Dice v Akron, C & Y R Co*, 342 US 359; 72 S Ct 312; 96 L Ed 398 [1952]). Nevertheless, the lower federal courts have not consistently used federal law to determine whether a release is broad enough to embody a FELA claim. See, e.g., *Taggart v United States*, 880 F2d 867, 870 (CA 6, 1989); *Virginia Impression Products Co, Inc v SCM Corp*, 448 F2d 262, 265 (CA 4, 1971). In the present case, we need not address the apparent conflict

because we are compelled to the same conclusion regardless of whether we apply state or federal law. See generally *Good v Pennsylvania R Co*, 263 F Supp 84, 86 (ED Pa, 1967).

The scope of a release is controlled by the intent of the parties as it is expressed in the release. See, e.g., *Taggart, supra* at 870; *Virginia Impression Products, supra* at 265; *Gramer v Gramer*, 207 Mich App 123, 125; 523 NW2d 861 (1994); *Adell v Sommers, Schwartz, Silver & Schwartz, PC*, 170 Mich App 196, 200; 428 NW2d 26 (1988). If the text in the release is unambiguous, we must ascertain the parties' intentions from the plain, ordinary meaning of the language of the release. *Empro Mfg Co, Inc v Ball-Co Mfg, Inc*, 870 F2d 423, 425 (CA 7, 1989); *Consolidated Gas Supply Corp v Federal Energy Regulatory Comm*, 745 F2d 281, 283-284 (CA 4, 1984); *Tuskegee Alumni Housing Foundation, Inc v Nat'l Homes Construction Corp*, 450 F Supp 714, 716 (SD Ohio, 1978), aff'd 624 F2d 1101 (CA 6, 1980); see also *Pakideh v Franklin Commercial Mortgage Group, Inc*, 213 Mich App 636, 640; 540 NW2d 777 (1995); *Michigan Chandelier Co v Morse*, 297 Mich 41; 297 NW 64 (1941); *Skotak, supra* at 619; *In re Loose*, 201 Mich App 361, 366; 505 NW2d 922 (1993). The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity. *Int'l Union of Bricklayers & Allied Craftsman Local Union No 20 v Martin Jaska, Inc*, 752 F2d 1401, 1406 (CA 9, 1985); *Wabash, Inc v Avnet, Inc*, 516 F Supp 995, 998 (ND Ill, 1981); see also *Moore v Kimball*, 291 Mich 455, 460-461; 289 NW 213 (1939). A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation. *Stewart v KHD Deutz of America*

*Corp*, 980 F2d 698, 702 (CA 11, 1993); see *Thomas v Jewell*, 300 Mich 556, 560-561; 2 NW2d 501 (1942). If the terms of the release are unambiguous, contradictory inferences become "subjective, and irrelevant," *Cleveland-Cliffs Iron Co v Chicago & NW Transportation Co*, 581 F Supp 1144, 1149 (WD Mich, 1984), and the legal effect of the language is a question of law to be resolved summarily. *Empro Mfg, supra* at 425; *Mason Drug Co, Inc v Harris*, 597 F2d 886, 887 (CA 5, 1979); *Freeman v Continental Gin Co*, 381 F2d 459, 465 (CA 5, 1967); see also *Skotek, supra* at 619; Restatement Contracts, 2d, § 212, comment d, p 127; Calamari & Perillo, Contracts (3d ed), § 3-10, pp 166-167.

In the present case, the language of the release evidences a clear intent to settle and to release defendant from liability for "any claim[,] . . . demand, action or cause of action, of any kind whatsoever, known or unknown, which [decedent had] or could have [had] on account of, or in any manner arising out of or connected with, [his] employment." We find no ambiguity in this broad, all-encompassing language. Indeed, the language releasing "any claim . . . of any kind whatsoever" can hardly be interpreted as excluding claims for personal injury. See, e.g., *Taggart, supra*; *Virginia Impression Products, supra*; *Dombrowski v City of Omer*, 199 Mich App 705, 708; 502 NW2d 707 (1993); *Moore v Campbell, Wyant & Cannon Foundry*, 142 Mich App 363, 368; 369 NW2d 904 (1985). Nor does the release contain any other language that could suggest such an interpretation. Contrary to plaintiff's contention, the text of the release does not limit its scope to issues pertaining to the terms of employment. Rather, the release expressly states that it

applies to "any" claim and that its scope is "not limited to" any specifically enumerated topic. In sum, the release is capable of but one reasonable interpretation: that decedent released all claims, including personal injury claims, in exchange for a substantial monetary consideration. Accordingly, we hold that the trial court correctly ruled that decedent released defendant from all personal injury actions that arose during the course of decedent's employment with defendant.

IV

Plaintiff also claims that the release cannot validly waive a FELA claim because it was premised upon a mutual mistake of fact. Again, we disagree. Pursuant to federal law, and consistent with state law, the party challenging a release bears the burden of establishing its invalidity. *Callen v Pennsylvania R Co*, 332 US 625, 629; 68 S Ct 296; 92 L Ed 242 (1948). This burden may be overcome by showing that the release was executed in reliance on a mutual mistake of fact. *Maynard, supra* at 163; *Shaheen v B F Goodrich Co*, 873 F2d 105, 107 (CA 6, 1989); *Brophy v Cincinnati, N O & T P R Co*, 855 F Supp 213, 215 (SD Ohio, 1994).

A release agreement may be set aside on the basis of a mutual mistake only if plaintiff can establish that at the time the release was executed, both parties were mistaken concerning an existing fact that was material to the agreement. *Counts v Burlington N R Co*, 952 F2d 1136, 1141 (CA 9, 1991); *Locke v Atchison T & S F R Co*, 309 F2d 811, 816 (CA 10, 1962); *Cleveland-Cliffs, supra* at 1152; see also *Gust v Consolidated Rail Corp*, 116 Mich App 90, 92; 321 NW2d 852

(1982), citing *Heston v Chicago & NW R Co*, 341 F Supp 126 (ND Ill, 1972); see generally *Sherwood v Walker*, 66 Mich 568; 33 NW 919 (1887). Where, as here, there exists a general release of all claims, a mutual mistake can vitiate the effect of a release only if neither party intended the agreement to be a general release. *Virginia Impression, supra* at 265.

In the instant case, plaintiff has documented no facts in support of her contention that decedent did not intend to execute a general release. Nor does plaintiff allege or document that decedent did not understand the release to be a general release of all claims. *Virginia Impression, supra* at 265. Therefore, we conclude that plaintiff has failed to establish a genuine issue of material fact in support of her position.

Further, plaintiff effectively concedes the inapplicability of the mutual mistake doctrine by emphasizing in her appellate brief that the existence or nature of "decedent's health was not material to the release." Because the doctrine of mutual mistake applies only when the mistaken fact was material to the agreement, *Heston, supra* at 128; *Gust, supra* at 92; Calamari, § 9-26, pp 379, 383, the alleged mutual mistake regarding decedent's health cannot invalidate the release in light of plaintiff's concession that decedent's health was immaterial to the release agreement. The cases plaintiff cites in support of her mutual mistake argument concern settlements arising out of specific actions for personal injury. See *Taylor v Chesapeake & O R Co*, 518 F2d 536 (CA 4, 1975); *Gust, supra*. In each case, the nature of the injuries was material to the agreements because the settlements and releases were allegedly bargained for and

premised on erroneous beliefs about the nature of the involved injuries. *Taylor, supra; Gust, supra.* Here, on the other hand, plaintiff concedes that the existence or nature of an injury was immaterial and had never even been considered. Accordingly, we conclude that the trial court did not err in refusing to vitiate the broad release agreement because of a claimed mutual mistake.

V

Finally, plaintiff claims that pursuant to 42 USC 55, the general release at issue cannot exempt defendant from FELA liability. However, plaintiff failed to raise this issue below. Furthermore, the facts necessary for us to address this issue have neither been presented nor resolved.[1] Accordingly, plaintiff has waived this issue. *Booth Newspapers, Inc v Univ of Michigan Bd of Regents,* 444 Mich 211, 234; 507 NW2d 422 (1993); *Garavaglia v Centra, Inc,* 211 Mich App 625; 536 NW2d 805 (1995).

In view of our disposition, we find it unnecessary to address the issues raised in defendant's cross appeal.

Affirmed.

---

[1] According to plaintiff's deposition testimony, decedent had complained that the noxious diesel fumes he had encountered at work had made him cough and had caused him respiratory trouble. Plaintiff's testimony suggests that decedent had complained about these problems during his tenure of employment with defendant. Because these observations present an unresolved factual issue regarding whether decedent had bargained away and released a known FELA claim, we cannot conclude that all facts necessary for resolution of this issue are presented on appeal. See, e.g., *South Buffalo R Co v Ahern,* 344 US 367, 372; 73 S Ct 340; 97 L Ed 395 (1953); *Callen, supra* at 630-631; *Shaheen, supra* at 107.